UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOE EDGER,                                       )
                                                 )
          Movant,                                )
                                                 )
     v.                                          )          No. 4:20 CV 397 CDP
                                                 )
UNITED STATES OF AMERICA,                        )
                                                 )
          Respondent.                            )

## MEMORANDUM AND ORDER

Movant Joe Edger pleaded guilty to unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).  (Case No. 4:15CR385.)  In a separate case, he pleaded guilty to conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o).  (Case No. 4:15CR335.)  The cases were consolidated for sentencing.  On March 9, 2018, I sentenced Edger to consecutive terms of imprisonment aggregating 360 months, which was the advisory guidelines sentence and represented the total of the statutory maximum sentences for both convictions, which was 10 years for § 922(g)(1) and 20 years for § 924(o).  Alleging error in sentencing, Edger appealed the judgments.  The Eighth Circuit Court of Appeals affirmed, *United States v. Edger*, 924 F.3d 1011 (8th Cir.), and the Supreme Court denied certiorari, 140 S. Ct. 420 (2019).  Edger now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, alleging several claims of trial court

error, ineffective assistance of counsel, and prosecutorial misconduct.  For the reasons that follow, I will deny Edger's motion to vacate.

## Background

On July 16, 2015, a grand jury in this district returned a three-count indictment against Dwane Taylor charging Taylor with one count of conspiracy to possess with the intent to distribute heroin and crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846; and two counts of possessing, brandishing, and discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A).  The two § 924(c) counts alleged that in the course of the violations, Taylor murdered Erin Davis and Juanita Davis through the use of the firearm, making the offenses punishable under 18 U.S.C. §§ 2, 924(j)(1), that is, death-penalty eligible.  *See* Case No. 4:15CR335 (CR335, or "the Taylor case"), ECF 2.

In a seven-count superseding indictment returned on October 7, 2015, a grand jury charged Taylor with the three offenses set out above and added four additional charges against him, namely, one count of conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o); one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1); and two counts of witness tampering, in violation of 18 U.S.C. § 1512(b)(1).  The superseding indictment also added Joe Edger, the movant here, as a defendant and charged him with the § 924(o) conspiracy offense and the two § 924(c) offenses

punishable under § 924(j)(1).[1]  (CR335, ECF 27.)

In the meanwhile, on August 12, 2015, Edger was charged in a separate indictment with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  *See* Case No. 4:15CR385 (CR385, or "the FIP case"), ECF 9.  Pursuant to a plea agreement with the government in that case, Edger pleaded guilty to the charge on June 22, 2016.  (*Id.*, ECF 49.)

Two months later, on August 18, 2016, Edger pleaded guilty to the § 924(o) conspiracy charge in the Taylor case.  Pursuant the plea agreement in that case, the government agreed to dismiss the two § 924(c) counts against Edger at the time of sentencing.  (CR335, ECF 102.)  The Taylor case (CR335) and the FIP case (CR385) were then consolidated for purposes of Edger's sentencing.  The CR335 case against Taylor remained on track for trial.

In his guilty plea to the § 924(o) conspiracy charge in the Taylor case, Edger admitted that he was an associate of Taylor's and knew that Taylor was involved in drug trafficking.  Taylor asked for Edger's help in locating Juanita Davis, whom Taylor believed had stolen some of his drugs and money as well as his car.  Edger drove Taylor around looking for the intended victim.  At some point, Edger agreed to trade his 9-mm caliber firearm to Taylor for Taylor's .22 caliber firearm.  In the

---

[1] The government ultimately determined to not seek the death penalty against either defendant (CR335, ECF 82), so the maximum penalty defendants faced on each § 924(c) charge was life imprisonment.

guilty plea agreement, the parties agreed that "Defendant understood that Taylor intended to use the nine millimeter firearm in connection with, among other things, Taylor's desire to locate his vehicle, drugs, and/or money which Taylor routinely used in connection with his drug trafficking and to retaliate against Juanita for taking those drug trafficking-related items from Taylor."  As set out in more detail in the plea agreement and the presentence report, Taylor used the 9-mm firearm to kill both Juanita Davis and Erin Davis, whom Taylor believed was also involved in the theft of his drug-related property.[2]

In the initial presentence report, the probation office concluded that the two charges to which Edger pleaded guilty would be grouped for sentencing and that the guidelines for the § 924(o) conspiracy charge would be used since it was the more serious crime with a higher offense level.  The report concluded that the base offense level was 14 under USSG § 2K2.1(a)(6)(B) because Edger was a prohibited person.  It then added four levels under § 2K2.2(b)(6)(B), as agreed by the parties in the plea agreement.  After deducting three levels for acceptance of responsibility, the report concluded that Edger's Total Offense Level was 15.  With Edger's criminal history category of VI, the probation office calculated Edger's advisory guidelines range at 41 to 51months.

---

[2] At his guilty plea in the FIP case, Edger admitted that the firearm that was the subject of that indictment was the .22 caliber firearm he received in exchange for a firearm that he had given Taylor.  Agents found and seized the .22 caliber firearm from Edger's residence in June 2015 upon execution of a search warrant at the residence.  (CR385, ECF 86.)

The government objected to the presentence report, arguing that the cross-reference provision under USSG § 2K2.1(c)(1)(B) applied because the firearm was used in connection with another offense where death resulted, and that therefore the base offense level should be that from the most analogous offense guideline concerning homicide.  Both the plea agreement and the presentence report acknowledged that the most analogous guideline here, if § 2K2.1(c)(1)(B) applied, would be for first-degree murder.  The government argued that with such cross-reference, Edger's base offense level should be 43 and his Total Offense Level 40, resulting in a guidelines range of 360 months.  At a hearing held April 25, 2017, both sides presented their arguments on the government's objections.  In a Memorandum and Order entered May 18, 2017, I determined that § 2K2.1(c)(1)(B)'s cross-reference provision applied.  I therefore sustained the government's objection, determined that Edger's Total Offense Level was 40, and concluded that the advisory guidelines range was 360 months.  (CR335, ECF 179.) At the time, trial for Dwane Taylor was scheduled to begin June 19, 2017.

I set Edger's sentencing for September 13, 2017.  In July 2017, however, Edger's attorneys moved to withdraw, which I granted after a hearing.  Upon appointing new counsel, I removed Edger's sentencing from the docket and, after conferring with counsel on both sides, I provided Edger the opportunity to file a motion to withdraw his guilty pleas in the two cases.  (*See* CR335, ECF 195.) Prior to the deadline for filing such a motion, however, Edger's new counsel also

sought to withdraw from representing him.

Information presented to the Court at a hearing on new counsel's motion to withdraw indicated that Edger's dispute with his new attorney, as it was with his previous counsel, involved jail recordings of certain of Edger's telephone calls that the government indicated it might rely on for sentencing purposes.  Because Edger asserted that he had not heard the recordings and did not say anything on the phone calls that could affect his sentencing, I ordered the government to produce and play the recordings at a hearing with Edger present so that I could resolve the dispute between him and his counsel.  Upon hearing the recordings, I granted new counsel's motion to withdraw.

After appointing another attorney for Edger, I again provided him the opportunity to file a motion to withdraw his guilty pleas (*see* CR335, ECF 208); but he informed the Court that he did not intend to file a motion to withdraw his guilty pleas, and he requested that the matter be set for sentencing.  Through counsel, he objected to the revised presentence report, which had incorporated my May 2017 Order regarding the cross-reference provision, and he filed a comprehensive sentencing memorandum arguing for a downward departure and a sentence within the 41-to-51-month range initially calculated by the probation office.  On March 9, 2018, I sentenced Edger to 360 months' imprisonment.

In its sentencing memorandum and at sentencing, ███████████████

████████████████████████████████████████████████



[3]

Edger appealed his sentence, arguing that I erred in applying the cross-reference guideline and in permitting the government to breach the plea agreement ████████████████████████████████████████. On May 23, 2019, the Eighth

████████████████████

[3] ██████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Circuit concluded that I did not err, and it affirmed the criminal judgments. *United States v. Edger*, 924 F.3d 1011 (8th Cir. 2019). The United States Supreme Court denied certiorari on October 15, 2019. *Edger v. United States*, 140 S. Ct. 420 (2019).

### Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255

Edger filed the instant motion to vacate on March 5, 2020. He raises twenty-three claims for relief:

1)    That the government breached the plea agreement ███████████
████████████████████████████████████

2)    That the government breached the plea agreement by advocating prior
to sentencing for an offense level higher than that agreed upon;

3)    That trial counsel was ineffective in failing to request an evidentiary
hearing on the government's contention that Edger breached the plea
agreement;

4)    That trial counsel was ineffective in failing to file a motion to
withdraw Edger's guilty plea;

5)    That trial counsel was ineffective in failing to conduct pretrial
discovery or file pretrial motions;

6)    That trial counsel was ineffective in failing to anticipate application of
the guidelines' cross-reference provision, thus rendering meaningless
Edger's acceptance of responsibility and ███████████████
████████;

7)    That trial counsel was ineffective in failing to advise Edger to
withdraw his guilty plea upon their learning of the applicability of the
cross-reference provision;

8)    That trial counsel was ineffective ███████████████████
████████████████████████████████████

9) That trial counsel was ineffective ███████████████████████
████████████████████████████████████████████████████
████████████████████████

10) That trial counsel was ineffective in advising Edger to not challenge
government conduct or his counsel's performance, thereby failing to
preserve claims for appeal;

11) That trial counsel was ineffective in failing to object to the application
of USSG § 2K2.1(c)(1)(B) on the basis of the government's failure to
prove that Edger knew or believed that the firearm in question would
be used or possessed in another offense;

12) That trial counsel was ineffective in failing to object to the Court's
instruction that the government produce telephone calls and letters
for the Court to consider on Edger's counsel's motion to withdraw,
and then in failing to challenge the authenticity of such materials
when produced;

13) That trial counsel was ineffective in failing to adequately oppose the
government's objection to the initial presentence investigation
report;

14) That the prosecutor engaged in misconduct ████████████████
████████████████████████████████████████████████████████
████████████████████████

15) That the prosecutor engaged in misconduct ████████████████
████████████████████████████████████████████████████████
██████████████████████

16) That the prosecutor engaged in misconduct by inducing Edger to
plead guilty with promises of a reduced sentence and through
mischaracterization of provisions in the plea agreement;

17) That the Court improperly departed upward from the recommended

guidelines sentence in the FIP case (CR385) without notice and in violation of the plea agreement;

18) That the Court improperly sought and considered unauthenticated telephone calls and letters in determining trial counsel's motion to withdraw;

19) That his conviction under § 924(o) is not supported by sufficient and reliable evidence because the government failed to prove the predicate drug trafficking offense, which is a necessary element of a § 924(o) conviction;

20) That, for purposes of the cross-reference provision under USSG § 2K2.1(c)(1)(B), the government failed to prove that he actually possessed or transferred the firearm that was used to commit the murders;

21) That USSG § 2K2.1(c)(1)(B) is inapplicable to his sentence because the government failed to prove that the deaths were the result of first degree murder and not a lesser offense;

22) That USSG § 2K2.1(c)(1)(B) is inapplicable to his sentence because the indictment did not specify an identifiable firearm that gave rise to the § 924(o) offense; and

23) That his trial counsel was ineffective in failing to seek evidence favorable and material to his punishment.

I will deny Edger's motion to vacate without an evidentiary hearing for the reasons that follow.

**Discussion**

A.    An Evidentiary Hearing is Not Required

The record before me conclusively demonstrates that Edger has no right to relief. I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and

the files and records of the case conclusively show that he is entitled to no relief."

*Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal

quotation marks omitted).  "No hearing is required, however, where the claim is

inadequate on its face or if the record affirmatively refutes the factual assertions

upon which it is based."  *Id.* (internal quotation marks and citations omitted).

Edger's claims here are inadequate on their face or conclusively refuted by the

record.  I will not hold an evidentiary hearing.

B.    Procedural Default (Ground 17)

If a claim could have been raised on direct appeal but was not, it cannot be

raised in a § 2255 motion unless the movant can show both (1) "cause" that

excuses the default, and (2) "actual prejudice" resulting from the errors of which

he complains.  *See United States v. Frady*, 456 U.S. 152, 165 (1982); *Matthews v.*

*United States*, 114 F.3d 112, 113 (8th Cir. 1997).  If a movant is unable to show

"cause" and "actual prejudice," he must make a "substantial claim that

constitutional error has caused the conviction of an innocent person . . . . "  *Schlup*

*v. Delo*, 513 U.S. 298, 321 (1995).  A claim of actual innocence must be based on

"new evidence" and must convince the Court that "it is more likely than not that no

reasonable juror would have found [movant] guilty beyond a reasonable doubt."

*Id*. at 327.  *See also Embrey v. Hershberger*, 131 F.3d 739, 741 (8th Cir. 1997)

(applying *Schlup* actual innocence standard in the context of a § 2255 motion).

In Ground 17, Edger contends that I wrongfully departed upward from the

recommended sentencing guidelines range in CR385. Edger could have raised this claim of unlawful upward departure on direct appeal, but he did not. Edger does not allege cause to excuse this failure. I therefore need not address whether he can show prejudice. Edger also fails to show that new evidence establishes his actual innocence. He has therefore failed to overcome his procedural default of this claim, and Ground 17 is denied.

C.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel, *Chesney v. United States,* 367 F.3d 1055, 1058 (8th Cir. 2004), and that right extends to plea negotiations, *Missouri v. Frye,* 566 U.S. 134, 144 (2012); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985), and sentencing, *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). Claims of ineffective assistance of counsel are governed by the two-part test set out in *Strickland v. Washington,* 466 U.S. 668 (1984). Accordingly, to prevail on his claims, Edger must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. *Tinajero-Ortiz v. United States,* 635 F.3d 1100, 1103 (8th Cir. 2011). To establish prejudice, Edger must prove a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). I need not address both components of the *Strickland* test if Edger makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

1.     *Failure to Request Evidentiary Hearing* (Ground 3)

In his third ground for relief, Edger claims that his counsel was ineffective

for failing to request an evidentiary hearing ███████████████████████████

████████████████████████████████████████████████████████████████████

█████████████     I will deny this claim.

        ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

        Moreover, Edger does not proffer what additional evidence should have

been presented to the Court, nor has he demonstrated that the result of the

proceeding would have been different had an "evidentiary hearing" been held.

*Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (movant made no

showing why additional evidence would likely have affected the result). ███████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████    He therefore cannot show prejudice by

counsel's failure to request such a hearing.

Ground 3 is denied.

2.    *Failure to Withdraw Guilty Pleas* (Grounds 4 and 7)

As summarized above, counsel was appointed to represent Edger throughout

his pretrial, change of plea, and sentencing proceedings.  After he pleaded guilty

and after I entered my May 2017 Order holding that § 2K2.1(c)(1)(B) would apply

to his sentence, his appointed counsel moved to withdraw, which I granted after a

hearing.  His replacement appointed counsel, Joan Miller, also moved to withdraw,

which I granted after a hearing.  Edger's third appointed counsel, Henry Miller,

remained on the case through sentencing and appeal.  In the claim raised in Ground

4 of his motion to vacate, Edger contends that he asked his attorneys to file a

motion to withdraw his guilty pleas and none of them did.  In Ground 7 he claims

that counsel were ineffective for failing to advise him to withdraw his pleas.  He

contends that these failures constituted ineffective assistance.

Edger personally addressed the Court on several occasions prior to his

sentencing, both by letter and at hearings on counsel's motions to withdraw.  He

also personally addressed the Court at sentencing.  (ECF 240 at pp. 6, 8-9; ECF

241 at pp, 8-11).  On none of these occasions did Edger indicate a desire or intent

to withdraw his guilty pleas; to the contrary, he complained about the sentencing

guidelines calculations and ███████████████████████████████████

████████████████████████████████. And while he claims that he

"explicitly instructed" his new sentencing counsel "in a written communication" to

file a motion to withdraw his guilty pleas (*see* ECF 19 at p. 6), that letter shows no

such explicit instruction and is, at best, equivocal. (ECF 19-1.) While that letter

sets out several bases that he claims warrant withdrawal of his guilty pleas, he also

goes on to say that "withdrawal of the guilty plea is not the only option," and he

relays various strategies for pursuing those other options. (*Id.* at p. 5.) In his

sentencing memorandum and at sentencing, Edger's counsel pursued various

strategies to reduce Edger's potential sentence.

   At the hearing on Ms. Miller's motion to withdraw, the government

presented several letters Edger wrote to personal acquaintances while he was

detained pending sentencing. In those letters, Edger referred to his strategy of

withdrawing his guilty pleas upon which, he believed, the government would have

to dismiss the charges against him. He asserted that he would prevail on this

strategy because of an "ace up his sleeve" and that he would be asking counsel to

file a motion to withdraw his guilty pleas. In her October 2017 motion to

withdraw as counsel, Ms. Miller referred to Edger's desire to withdraw his guilty

pleas, but she did not move on his behalf to do so. (CR335, ECF 199.) On

January 31, 2018, Edger's new counsel, Mr. Miller, moved that a sentencing date

be set, informing the Court that "Mr. Edger does not intend to file a motion to

withdraw his guilty pleas in the above listed cases." (*Id.*, ECF 213.)

As stated by the Supreme Court, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Here, counsel's failure to file a motion to withdraw the plea and instead pursue arguments to reduce Edger's guidelines sentence was reasonable strategy because Edger faced terms of life imprisonment if he had withdrawn his guilty pleas and proceeded to trial on the charges brought against him in the indictments.[4] *Williams v. United States,* 343 F.3d 927, 928-29 (8th Cir. 2003) (reasonable strategy to advise defendant to maintain guilty plea because doing so benefitted defendant by limiting his sentencing range).  *Cf. Collins v. United States*, No. 1:04CV00123 ERW, 2005 WL 1876115, at *6 (E.D. Mo. Aug. 8, 2005) (movant failed to meet burden of demonstrating that counsel acted unreasonably in encouraging guilty plea because potential sentencing range could have significantly increased if he proceeded to trial).

Edger has failed to meet his burden of demonstrating that his counsel acted

---

[4] As indicated above, the two § 924(c) counts against Edger were death-penalty eligible, but the government had earlier determined that it would not seek the death penalty. Edger also has not shown that there was any reasonable likelihood that a motion to withdraw his pleas would have been granted.

unreasonably.  As stated above, Edger made many statements to the Court, both in writing and at hearings, including at his sentencing, and in none of those statements did he inform the Court that he wished to withdraw his pleas.  Under all the circumstances of this case, he has failed to overcome the presumption that counsel's conduct in this regard was a matter of sound strategy. Grounds 4 and 7 are therefore denied.

3.    *Pretrial Matters* (Ground 5)

In Ground 5, Edger contends that trial counsel should have filed pretrial motions seeking discovery, a bill of particulars, and to suppress statements.  He argues that by failing to engage in such pretrial practice, counsel failed to put the government's case to a meaningful test, particularly given that the government was not in possession of the firearm that was the subject of the § 924(o) charge.  The record shows that Edger is not entitled to relief on the claim.

On July 6, 2016, Edger, through counsel, filed a waiver of pretrial motions in the Taylor case averring that Edger,

> having been fully advised of [his] right to file pre-trial motions and to have an evidentiary hearing thereon hereby states that there are no issues that [he] wishes to raise by way of pre-trial motions in this cause.  Counsel has personally discussed this matter with the Defendant and the Defendant agrees and concurs in the decision not to raise any issues by way of pre-trial motions.

(CR335, ECF 92.)[5]  On July 20, 2016, United States Magistrate Judge David D.

---

[5] Edger filed a similar waiver in the FIP case.  (*See* CR385, ECF 44.)

Noce held a hearing on Edger's waiver:

> THE COURT:  All right.  You know that you have the right to file pretrial motions.  They are documents that you and your attorney would discuss, and assuming there is something to bring to the Court's attention about the Government's case against you, those documents, those motions could call into question or challenge some or all of the Government's case against you.  The Court could hold a hearing, and then would make a decision either in your favor or in the Government's favor on those motions.
>
> You understand that you have those rights?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  All right.  Consistent with what [your counsel] has said, is it your decision to give up your right to go forward on any pretrial motion that may have been filed, to give up your right to file any other pretrial motion in this case, and, instead, go before Judge Catherine Perry without having had a pretrial hearing on motions?  Is that your decision?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  You know that, making that decision, now you won't be able to change your mind and file pretrial motions in this case in the future?  You understand that?
>
> THE DEFENDANT:  Correct, Your Honor.
>
> . . .
>
> THE COURT:  You're doing this of your own free will?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  After you've talked with [your counsel] about it?
>
> THE DEFENDANT:  Yes, Your Honor.

(*Id.*, ECF 258.)  On this record, Judge Noce found that Edger voluntarily waived

his right to file pretrial motions and to have a pretrial hearing in the case. (*Id.*, ECF 97.)[6]

Moreover, in his plea agreements, Edger agreed that by pleading guilty, he "acknowledges, fully understands and hereby waives his rights, including but not limited to: . . . the right to file pretrial motions, including motions to suppress or exclude evidence"; that his counsel explained these rights and the consequences of their waiver; and that he was satisfied with counsel's representation. (CR335, ECF 103 at ¶ 9; CR385, ECF 50 at ¶ 9.)

In view of these repeated public declarations of Edger's intention to voluntarily waive his right to file pretrial motions, Edger has failed to establish that counsel acted deficiently in not filing such motions or that he was prejudiced by counsel's conduct. *See Marquez v. United States*, No. 4:07CV361 JCH, 2008 WL 4642859, at *3 (E.D. Mo. Oct. 17, 2008). Ground 5 is denied.

4.  *Government's Failure to Prove Edger's Knowledge of Illegal Purpose* (Ground 11)

In Ground 11, Edger claims that counsel was ineffective for failing to object to the application of § 2K2.1(c)(1)(B) on the basis of the government's failure to prove that Edger knew that the 9-mm firearm would be used or possessed in

---

[6] A waiver hearing was also held in the FIP case, after which United States Magistrate Judge Nannette A. Baker found that Edger understood his rights to file pretrial motions and have a hearing on any motions, and that he wished to waive those rights. (CR385 – ECF 46, ECF 47.)

another offense.  Edger admitted in the CR335 plea agreement, however, that he "understood that Taylor intended to use the nine millimeter firearm in connection with, among other things, Taylor's desire to locate his vehicle, drugs, and/or money which Taylor routinely used in connection with his drug trafficking and to retaliate against Juanita for taking those drug trafficking-related items from Taylor" and "understood that Taylor used the nine millimeter firearm . . . to murder Juanita."  He admitted to this knowledge at the plea proceeding as well.  Because counsel is not ineffective for failing to raise meritless objections, *Rodriquez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam), Ground 11 is denied.

5.    *Failure to Anticipate Sentencing Enhancement* (Ground 6)

Edger contends that with the application of § 2K2.1(c)(1)(B) to his sentence calculation, the 3-level reduction for acceptance of responsibility was rendered meaningless.  He argues in Ground 6 that his plea counsel was ineffective for failing to anticipate and advise him on the application of § 2K2.1(c)(1)(B) and its effect on the acceptance-of-responsibility reduction.  Edger's claim is without merit.  In his CR335 plea agreement, Edger himself acknowledged that "application of the Sentencing Guidelines could include the application of Section 2K2.1(c)(1)(B) which provides that an offense involving first degree murder has a base offense level of 43."  This was also discussed at length at the plea hearing and Edger indicated he had discussed it with counsel.  (CR335, ECF 197 at p. 18).  Ground 6 is denied.

- 20 -

6.    ████████████████████████████ (Ground 8)

In Ground 8, Edger claims that plea counsel was ineffective ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████    In each of his executed plea agreements, however, Edger agreed that the

written plea agreement was the complete statement of the parties' commitments.

And each agreement contained an integration clause establishing that the document

"constitutes the entire agreement between the defendant and the government, and

no other promises or inducements have been made, directly or indirectly, by any

agent of the government . . . concerning any plea to be entered in this case."  Edger

confirmed this understanding under oath at each change-of-plea proceeding.

Integration clauses, especially when coupled with reaffirmations at plea

proceedings, is "strong evidence" that no oral promise existed.  *United States v.*

*Leach*, 562 F.3d 930, 937 (8th Cir. 2009).  Counsel cannot be ineffective ██████████

████████████████████████████████████.

Moreover, because the prosecution against Edger did not begin until August

2015 and he made his first judicial appearance on August 12, 2015, counsel's

alleged conduct in failing to memorialize a June 2015 conversation cannot give

rise to a violation of Edger's Sixth Amendment right to counsel.  "[T]he right to

counsel guaranteed by the Sixth Amendment applies at the first appearance before

a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty.*, <u>554 U.S. 191, 194</u> (2008). *See also United States v. Magallon*, <u>984 F.3d 1263, 1285</u> (8th Cir. 2021) (Sixth Amendment right to counsel does not attach until defendant charged with crimes); *United States v. Waits*, <u>919 F.3d 1090, 1094</u> (8th Cir. 2019) (Sixth Amendment right to counsel does not attach until a prosecution is commenced).

Edger's Sixth Amendment claim here challenging counsel's pre-prosecution conduct is not cognizable in this proceeding and must be denied.

7.    *Motion to Suppress Statements* (Ground 9)

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████. Edger contends that his trial counsel should have moved to suppress his statements ███████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████ As with the claim raised in Ground 5 discussed above, Edger voluntarily waived his right to file motions to suppress; and as with Ground 8, he agreed in the plea agreements and confirmed at his change-of-plea proceedings that the plea agreements constituted the entirety of the agreement between he and the government, and that there were no other promises made to him in relation to his guilty pleas. Ground 9 is denied.

8.     *Failure to Challenge Government Conduct* (Ground 10)

Edger contends that sentencing counsel was ineffective by advising him to not raise at the sentencing proceeding his assertion that the government breached the plea agreement and induced him to plead guilty through false promises.  Edger asserts that counsel's advice prevented him from addressing the district court regarding the government's conduct, which resulted in failing to preserve the claim for appeal.  While Edger correctly states that his claim of alleged breach was not preserved in the trial court, it was nevertheless reviewed by the court of appeals for plain error.  Edger has not shown that the court of appeals' decision on the claim would have been different had it been properly preserved and reviewed under a different standard, and thus he has not demonstrated that he was prejudiced by counsel's advice to not raise the claim at sentencing.  *See Bolden v. United States*, 171 F. Supp. 3d 891, 929 (E.D. Mo. 2016).  Ground 10 is denied.

9.     *Production of Telephone Calls and Letters* (Ground 12)

As described above, Edger's first two appointed attorneys moved to withdraw from representing him in his criminal cases, and I held hearings on those motions in August and November 2017.  Included among counsel's reasons for withdrawal was the substance of various of Edger's recorded jailhouse telephone calls and letters written to third parties.  Although his counsel had reviewed those communications, Edger claimed he had not been given the opportunity to hear or see them.  Given that my determination whether to permit counsel to withdraw

would be based in part on those communications, I ordered the government to disclose them and make them a part of the record at the hearing in November 2017. Disclosure on the record with Edger present likewise guaranteed that Edger would know the content of the communications at issue.  Edger now claims that counsel was ineffective for failing to object to the disclosure of those communications in court, appearing to suggest that I should not have been privy to their content.  He also claims that counsel was ineffective for failing to challenge their authenticity. Edger appears to claim that counsel's ineffectiveness resulted in the communications being made a part of the record, ████████████████████ ██████████████████████████████████████████████ ██████████████████████.

In setting the hearing on second counsel's motion to withdraw, I noted that the substance of the jailhouse communications was "central" to the disagreements between Edger and his counsel, that the case could not move forward until I resolved the dispute, and that I could not resolve the dispute without hearing the recordings.  (CR335, ECF 203.)  Edger's claim that I did not need to hear and/or see his communications is therefore without merit.

Likewise, his claim that the government was able to rely on his communications at sentencing *only* because they were admitted at that November 2017 hearing is without merit. ████████████████████████ ██████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████     The admission of Edger's communications at an

earlier hearing bore no relation to the government's ability to address those

communications at sentencing.  Given that the government would have been able

to address Edger's communications at sentencing regardless of their admission at

the November 2017 hearing, Edger cannot show prejudice in counsel's failure to

object to their admission.

The bases on which Edger argues that counsel should have objected to the

admission of the jailhouse communications have no merit, and Edger cannot show

prejudice by their admission.  Ground 12 is denied.

> 10.  *Opposing the Government's Objection to the Presentence Report* (Ground 13)

As discussed above, the probation office initially calculated Edger's

advisory guidelines range at 41 to 51months.  The government objected, arguing

that USSG § 2K2.1(c)(1)(B) applied to the circumstances of the case.  At a hearing

held on the government's objections, Edger's counsel advocated against

application of § 2K2.1(c)(1)(B).  After I sustained the objections, Edger's

sentencing counsel again argued against application of § 2K2.1(c)(1)(B), both in

written memoranda and at sentencing.  I overruled Edger's arguments.  On appeal,

the Eighth Circuit concluded that I did not err in applying § 2K2.1(c)(1)(B).

*United States v. Edger*, 924 F.3d 1011 (8th Cir. 2019).

In Ground 13, Edger claims that his counsel was ineffective in failing to raise additional arguments against application of § 2K2.1(c)(1)(B).  Specifically, Edger contends that counsel should have argued that 1) the rule of lenity applied to interpretation of § 2K2.1(c)(1)(B), 2) the government's objections to the initial presentence report violated the plea agreement, 3) the government failed to prove that he knew the firearm would be used in another offense, 4) the government failed to prove that he actually possessed the firearm, 5) the government failed to prove the deaths were the result of first-degree murder, and 6) the indictment failed to specify an identifiable firearm for purposes of § 2K2.1(c)(1)(B).  With the exception of the lenity argument, I have addressed all of Edger's other arguments in this Memorandum and Order in relation to several of his other claims, finding them all to be without merit.  As repeated throughout this Order, counsel is not ineffective for failing to pursue meritless arguments.

Edger's lenity argument is without merit as well.

[T]he rule of lenity generally requires that doubts be resolved in favor of a defendant where there is ambiguity in a criminal statute. The rule of lenity, however, is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the statute. Lenity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language, structure, legislative history, and motivating policies of the statute.  It will be invoked only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended.

*United States v. Warren*, 149 F.3d 825, 828 (8th Cir. 1998) (internal quotation marks and citations omitted). In addressing the relevant language of the sentencing guidelines in the context of Edger's case, the Eighth Circuit unequivocally stated that Edger's reading of the guidelines was "too narrow" and that the "cited in the offense of conviction" language of § 2K2.1(c)(1)(B) clearly applied to the 9-mm firearm in this case:

> It is clear from the record as a whole that Edger was convicted of violating § 924(o) by conspiring to possess the nine-millimeter firearm that he transferred to Taylor. In establishing a factual basis for his guilty plea under § 924(o), Edger admitted that he knew Taylor was involved in drug trafficking, that he agreed to transfer the nine-millimeter firearm to Taylor, and that he understood that Taylor would use the firearm in connection with drug trafficking activities. The nine-millimeter firearm was therefore "cited in the offense of conviction," because the record refers to that gun as the basis for the § 924(o) conviction.

*Edger*, 924 F.3d at 1014. There was no grievous ambiguity or uncertainty in the language or structure of § 2K2.1(c)(1)(B), and applying it here did not involve a "guess" as to what was intended by its drafters. Accordingly, the doctrine of lenity does not apply, and there is no reasonable probability that Edger would have prevailed on this argument had counsel raised it. Edger has therefore failed to establish that he was prejudiced by counsel's failure to pursue the argument.

Ground 13 is denied.

11.    *Favorable and Material Evidence* (Ground 23)

I must liberally construe pro se pleadings and § 2255 motions. *Saunders v.*

*United States*, 236 F.3d 950, 953 (8th Cir. 2001).  However, if a § 2255 motion "lacks sufficient specificity under even the most liberal pleading requirements," the movant is entitled to no relief.  *See id.* (internal quotation marks and citation omitted).  This is so because without such specificity, a court cannot determine whether counsel's performance was deficient under the Sixth Amendment or whether counsel's deficient performance prejudiced the defense.  *See id.* at 952-53; *see also Delgado*, 162 F.3d at 983 (movant made no showing why additional evidence would likely have affected the result).

Here, in Ground 23, Edger claims that counsel should have sought evidence favorable and material to his punishment.  But he does not specify what evidence was available to assist in his sentence consideration.  Although he claims that he does not know what evidence there was because counsel failed to seek it, his failure to provide any detail about what information counsel should have sought leaves me with only vague and conclusory assertions that such unknown information would have affected his sentence.  I cannot grant relief on such vague and conclusory assertions.  Ground 23 is denied.

D.    Prosecutorial Misconduct

1.    *Breach of Plea Agreement* (Ground 1)

Edger claims that the government breached the plea agreements ███████ ████████████████████████████████████████████████  Edger made this same argument on his direct appeal.  The court of appeals denied the claim, finding

that Edger had engaged in conduct that relieved the government of its obligation.

Claims that were raised and decided on direct appeal cannot be relitigated on a §

2255 motion to vacate. *Thompson v. United States*, 872 F.3d 560, 565 (8th Cir.

2017). Ground 1 of Edger's motion is denied.

      2.    *Breach of Plea Agreement* (Ground 2)

In both plea agreements, the parties "ma[de] no estimate as to the Total

Offense" level under the guidelines for sentencing, but they "reserve[d] the right to

make a recommendation to the Court as to Total Offense Level at the time of

sentencing after each party has had the opportunity to review the presentence

investigation report." In Ground 2 of his motion to vacate here, Edger contends

that the government breached this portion of the plea agreements by objecting to

the initial presentence report and requesting application of § 2K2.1(c)(1)(B) *before*

sentencing instead of "at the time of sentencing." Edger also contends that setting

the Total Offense Level at 15 was part of the plea negotiation process, which led in

part to his agreement to plead guilty.

First, as observed by the government in response to Edger's claim, the

standard practice in this Court is to permit the parties to file written objections to

the presentence report before sentencing, as both the government and Edger did in

this case. The government filed written objections to the initial presentence report,

arguing that § 2K2.1(c)(1)(B) applied, which would have the effect of raising the

Total Offense Level above that proposed in the report. Edger filed written

objections to the revised presentence report as well as a separate sentencing memorandum, arguing that § 2K2.1(c)(1)(B) did not apply and requesting that the Court impose a sentence consistent with the initial presentence report that determined the Total Offense Level to be 15.  Filing these objections and memoranda before the in-court sentencing proceeding as opposed to "at the time of sentencing" is a distinction without a difference.  Moreover, by arguing that § 2K2.1(c)(1)(B) applied, the government "did not advocate for anything inconsistent with the stipulations of the plea agreement; it advocated for something that was not resolved by the plea agreement."  *United States v. Leach*, 491 F.3d 858, 864 (8th Cir. 2007).  The government was free to advocate for the enhancement because the application of § 2K2.1(c)(1)(B), while contemplated in the plea agreement, was an issue not agreed to or specifically set out in the agreement.  *Leach*, 491 F.3d at 865.

Additionally, the plain language of the plea agreements, as Edger confirmed under oath at the change-of-plea proceedings, shows that there was no agreement to a Total Offense Level.  And Edger agreed that no promises or inducements were made to him, either directly or indirectly, concerning his decision to plead guilty other than those set out in the written plea agreements.  His claim here that the discussions during plea negotiations led him to plead guilty because of his understanding that the Total Offense Level would be 15 runs counter to the "strong evidence" that there were no inducements to Edger's guilty plea other than those

contained in the written agreements.  Edger signed the agreements, acknowledging that he understood their terms.  Edger has not met his burden of establishing that the government breached the agreements.

Ground 2 is denied.

3.    *Pre-Plea Misrepresentations* (Grounds 14, 15, and 16)

In Grounds 14, 15, and 16, Edger raises various claims that the government deceived him ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████ Edger contends that the government knew that its promises and evidence were untruthful.  Edger argues that because the evidence obtained through the government's false promises and misrepresentations formed the basis of the charges against him and the terms of his guilty pleas, his pleas should be rendered involuntary.  Edger's claims fail.

As stated and restated throughout this Order, Edger's claims of false promises run counter to the "strong evidence" that there were no promises or inducements to Edger's guilty pleas other than those contained in the written agreements.  And to the extent Edger claims that the government based its criminal charges and the foundation of the plea agreements ███████████████████████

████████████████████████████ I provided Edger several opportunities to move to withdraw his guilty pleas after I determined that § 2K2.1(c)(1)(B) applied to his sentencing, and he did not do so.  Given those

opportunities and his determination to stand on his existing guilty pleas with the full knowledge of what he faced at sentencing, I cannot find that the government's alleged pre-plea conduct rendered Edger's guilty pleas unknowing or involuntary.

Grounds 14, 15, and 16 are denied.

E.    <u>Claims of Trial Court Error</u> (Grounds 18 and 19)

In Ground 18, Edger claims that I improperly considered unauthenticated jailhouse communications in considering counsel's motion to withdraw. In Ground 19, he claims that there was insufficient evidence to support his conviction under § 924(o). Edger waived his right to bring these claims by agreeing to the waiver of post-conviction relief in his plea agreements. In the plea agreements and as acknowledged under oath at his guilty pleas, Edger explicitly waived the right to file post-conviction motions on any ground other than prosecutorial misconduct or ineffective assistance of counsel. The claims raised in Grounds 18 and 19 do not fall within either exception to his waiver. And to the extent he claims his pleas and thus his waivers were involuntary because of ineffective assistance of counsel or prosecutorial misconduct, those claims are without merit as discussed above.

I may consider the claims, however, if enforcing the waiver would result in a miscarriage of justice. *See Johnson v. United States*, No. 4:10-CV-01531-CDP, 2011 WL 1559764, at *6 (E.D. Mo. Apr. 25, 2011) (citing *United States v. Andis*, 333 F.3d 886, 889-90 (8th Cir. 2003)). Because Edger has failed to show that his sentence was illegal or that his conviction and sentence were based on some

constitutionally impermissible factor, he has failed to show that a miscarriage of justice would occur if I were to honor the waiver and not consider his claims.  *See United States v. Andis*, 333 F.3d 886 (8th Cir. 2003).  Grounds 18 and 19 are therefore dismissed as waived.

F.    Challenge to Guidelines Application (Grounds 20, 21, 22)

In Grounds 20, 21, and 22, Edger claims that I improperly applied USSG § 2K2.1(c)(1)(B) in determining his sentence because the government failed to prove that he actually possessed or transferred the firearm used to commit the murders, the government failed to prove that the deaths were the result of first-degree murder, and the indictment did not identify the specific firearm that gave rise to the offense.  Absent a miscarriage of justice, ordinary questions of guidelines interpretation do not present a proper § 2255 claim.  *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011).  Because Edger's sentence does not exceed the statutory maximum for the offense of conviction, there is no miscarriage of justice here.  *Id.* at 705.

Moreover, as with Grounds 18 and 19, Edger waived his right to bring these claims by agreeing to the waiver of post-conviction relief in his plea agreements.  Edger's claims that USSG § 2K2.1(c)(1)(B) was inapplicable to his conviction do not fall within the prosecutorial-misconduct or ineffective-counsel exceptions to his waiver.  And the record does not demonstrate that his waivers and pleas were not entered into knowingly and voluntarily.  Moreover, after I ruled that USSG §

- 33 -

2K2.1(c)(1)(B) applied to this case, I afforded Edger opportunities to move to withdraw his guilty pleas based on that circumstance, and he did not do so.  The applicability of § 2K2.1(c)(1)(B) therefore did not render Edger's waivers and pleas unknowing or involuntary.  Accordingly, I may consider Edger's post-conviction claim only if enforcing the waiver would result in a miscarriage of justice.  But, as noted above, there is no miscarriage of justice here because Edger's sentence did not exceed the statutory maximum.  *See Sun Bear*, 644 F.3d at 706 ("basic principle that, in sentencing, a miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law.").  The claims may therefore be summarily dismissed as waived.

Regardless, Edger is not entitled to relief on his claims.  Edger's claim in Ground 20 that the government failed to prove that he actually possessed or transferred the firearm used to commit the murders is foreclosed by the plea agreement Edger signed wherein he admitted to such actual possession and transfer, and by his guilty plea under oath admitting to the same.  Ground 20 is denied.

As to Ground 21, Edger claims that I should not have applied § 2K2.1(c)(1)(B) to enhance his sentence because there was no conviction for – and the government failed to prove – first-degree murder, the analogous offense on which I based application of § 2K2.1(c)(1)(B).  Neither a conviction nor government's proof beyond a reasonable doubt is required for me to find

sentencing facts for enhancement under § 2K2.1(c)(1)(B).  *United States v. Jenkins*, 792 F.3d 931, 935-36 (8th Cir. 2015).  I am required to find sentencing facts only by a preponderance of the evidence.  *Id.* at 935.  Here, in the plea agreement, the parties agreed that a guidelines sentence could include application of § 2K2.1(c)(1)(B) with a cross-reference for an offense involving first-degree murder.  The presentence reports also advised that a guidelines sentence could include application of § 2K2.1(c)(1)(B) for an offense involving first-degree murder.  Edger never objected to the potential use of first-degree murder as the analogous offense – that is, until now.  Regardless, the facts to which Edger admitted in his plea agreement and at his guilty plea proceeding in CR335, upon which I based my factual findings in determining that § 2K2.1(c)(1)(B) applied with first-degree murder as the analogous offense, more than supported a finding by a preponderance of the evidence that Edger possessed or transferred the firearm that was used to commit first-degree murder.  *See* 18 U.S.C. § 1111 (murder in the first degree includes any kind of "willful, deliberate, malicious, and premeditated killing[.]").  Ground 21 is denied.

Finally, Edger argues in Ground 22 that § 2K2.1(c)(1)(B) did not apply because the indictment did not identify the specific firearm giving rise to the offense.  Edger made this same argument on his direct appeal, and the court of appeals denied the claim finding that the relevant firearm was "cited in the offense of conviction" as required by the guideline and that I did not err in applying §

2K2.1(c)(1)(B). Claims that were raised and decided on direct appeal cannot be relitigated on a § 2255 motion to vacate. *Thompson*, 872 F.3d at 565. Ground 22 of Edger's motion is denied.

### I Will Not Issue a Certificate of Appealability

As Edger has not made a substantial showing of the denial of a federal constitutional right, I will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that movant Joe Edger's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that movant's motion for expedited ruling [22] is denied as moot.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Edger has not made a substantial showing of the denial of a federal constitutional right.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of March, 2023.